FILED
2010 Sep-02 PM 03:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DANIEL FRANK ALLEN, ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| vs. ] | 5:09-CV-1371-LSC |
| ] | |
| MICHAEL J. ASTRUE, ] | |
| Commissioner, ] | |
| Social Security Administration, ] | |
| ] | |
| Defendant. ] | |

MEMORANDUM OF OPINION

I.   Introduction.

Plaintiff, Daniel Franklin Allen, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Mr. Allen timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Allen was forty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education. (Tr. at 34,

330, 684, Doc. 9 at 4.)  His past work experience includes work as a shipping clerk, order filler, processor, delivery man, and cabinet maker.  (Tr. at 33, 702-03, Doc. 9 at 4.)  Mr. Allen claims that he became disabled on February 17, 2005, due to back and neck pain, as well as migraine headaches.  (Tr. at 68.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. § 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. § 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. § 416.920(a)(4)(ii).  Otherwise, the analysis

continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id*.  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. §  416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id*.  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id*.  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id*.

Applying the sequential evaluation process, the ALJ determined that

Mr. Allen had not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. at 28.) According to the ALJ, Plaintiff had the following severe impairments based on the requirements set forth in the regulations: chronic obstructive pulmonary disease (COPD), alcohol and tobacco abuse, status post right inguinal hernia, status post anterior cervical diskectomy and fusion (ACDF), gastroesophageal reflux disease, depressive disorder, and status post left clavicle fracture. *Id.* However, he found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments" in Appendix 1, Subpart P, Regulations No. 4. *Id.* at 29. The ALJ determined that Plaintiff has the residual functional capacity as follows:

> with moderate or less pain, he is able to sustain an eight hour workday at the light exertional level, stand continuously for a maximum of one hour, walk continuously for 50 yards, and sit continuously for two hours, with no excessive dust, chemicals, and fumes in the work place, meaning not above the normal household levels. His ability to respond to the mental demands of work would be fair or better, meaning no more than moderate limitations in the areas of understanding and memory, concentration and persistence of pace, social interaction, and to adapt and tolerate work stresses.

*Id.* at 29-30.

According to the ALJ, Mr. Allen "is not able to perform any past relevant work." (Tr. at 33.) The ALJ determined that Plaintiff's "transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." *Id.* He found that given Mr. Allen's age, education, work experience, and RFC, there are a significant number of jobs in the national economy that Plaintiff can perform. *Id.* The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since February 17, 2005, the date the application was filed." *Id.* at 34.

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401

(1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards

is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Plaintiff alleges the ALJ's decision should be reversed because it is not supported by substantial evidence and applicable law for one reason.  (Doc. 9 at 6-10.)  Plaintiff claims the ALJ improperly relied upon the opinion of Sharon Thompson, a disability specialist, in determining Plaintiff's RFC.  *Id*.

In determining disability, the ALJ considers evidence from "acceptable medical sources," which include licensed physicians and licensed or certified psychologists.  20 C.F.R. § 416.913(a).  The ALJ can consider evidence not only from medical sources, but also "evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work."  20 C.F.R. § 416.913(d).  "The better an explanation a source provides for an opinion, the more weight we will give that opinion."  20 C.F.R. § 416.927(d)(3).  The weight given to opinions of non-examining sources "will depend on the degree to which they provide supporting explanations for their opinions."  *Id*.

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(e).  The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis,* 125 F.3d at 1440.  Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity.  *See, e.g.,* 20 C.F.R. § 404.1546(c).  A consultative examiner's opinion is subject to the same tests as a treating physician; if the opinion is inconsistent with the record or the physician's notes, the ALJ may give it less weight.  *See Crawford,* 363 F.3d at 1160 (evaluating consultative examiner's opinion in light of contemporaneous examination by another doctor).  Furthermore, because a consultative examiner sees a patient on one occasion rather than

on an on-going basis, the opinions derived from such an examination are "not entitled to great weight." *Id.*

In determining Plaintiff's RFC in the present case, the ALJ found, in sum, Plaintiff "is limited but is able to perform at least some type of work activity, and in this case, work of a light exertional level."[1] (Tr. at 33.) In coming to this conclusion, the ALJ considered Plaintiff's hospital records, the opinions of Plaintiff's consultative physicians, the findings of a disability specialist, and Plaintiff's own testimony.

On February 4, 2005, Plaintiff was examined by Dr. Ben Gomez due to a clavicle fracture he sustained after a motor vehicle accident in January 2005. (Tr. at 28, 578.) X-rays determined Plaintiff had a comminuted fracture with displacement and minimal angulation. *Id.* Then, on February 17, 2005, the alleged onset date, Plaintiff went to the emergency room after being shot in the left knee by a nail gun. *Id.* at 28, 582-585. X-rays showed a medium nail within the subcutaneous fat overlying the patella and patellar ligament, with no other significant findings. *Id.* On December 27, 2005, Plaintiff was examined and determined to have a right inguinal hernia.

---

[1] *See supra* p. 4 for the ALJ's RFC determination.

*Id*. at 674.  Because the hernia was causing severe pain, Dr. Jeffery Manord performed an open mesh repair of right inguinal hernia on January 11, 2006, and Plaintiff was discharged on the same day.  Dr. Manord noted findings as "unremarkable."  *Id*. at 637-45.  Almost one year later, on January 8, 2007, Plaintiff was admitted to the hospital due to chest pains and shortness of breath.  *Id*. at 29, 647-49.  He was diagnosed with emphysema, gastritis and GU reflux, tobacco and alcohol abuse, bilateral pneumonia, and COPD.  On this particular visit, it does not appear that Plaintiff complained of back or neck pain.  *Id*.

After the alleged onset date and in addition to Plaintiff's hospital visits, Plaintiff was examined by two physicians, Dr. Will R. Crouch and Dr. Jack L. Bentley.  On May 12, 2005, Dr. Crouch performed a consultative examination on Plaintiff, due primarily to back and neck pain.  (Tr. at 28, 595-96.)  Plaintiff informed Dr. Crouch that he underwent a surgical fusion of the cervical spine in 2001, and fractured his clavicle and reinjured his neck in a car accident in 2004.  *Id*.  Plaintiff complained that his lower back pain worsened when he tried to stand and work; estimated he could not stand for more than 20 to 30 minutes at a time, or sit for more than one

hour without severe pain; claimed he tended to lie around and watch television; complained of having migraines 2 to 3 times a day and had difficulty sleeping because of neck pain; and claimed to sleep about two hours at a time, primarily in his recliner, but felt he could do something if he could get his "sleep right". *Id.* Dr. Crouch noted that Plaintiff was not on any medication, nor did he see a physician regularly. Although Dr. Crouch did not form an opinion specifically as to Plaintiff's RFC, he did note that Plaintiff did not appear to be in acute distress, he ambulated without an assistive device, walked on heels and toes without difficulty, was able to squat and arise without assistance, and his gait and station were normal. *Id*. at 596. Additionally, Dr. Crouch noted Plaintiff's range of motion of the cervical spine was as follows: "forward flexion 45°, hyperextension 20°, left lateral flexion 12°, right lateral flexion 10°, Left rotation 65°, right rotation 45°. Motor strength in the upper extremities is 5/5 bilaterally." *Id*. Dr. Crouch diagnosed Plaintiff as having status post cervical laminectomy with fusion, history of chronic cervical pain but no radicular pain in the arms, chronic low back pain with no radicular component and no neurological deficits in the lower extremities (probably secondary to degenerative disc

disease), and migraine headaches by history. (Tr. at 28-29, 595-96.)

On May 17, 2005, Plaintiff underwent a consultative psychological examination performed by Dr. Bentley. (Tr. at 29, 31, 597-99.) Dr. Bentley noted Plaintiff's complaints of back and neck pain, as well as his complaints of migraines. *Id.* at 597. Plaintiff informed Dr. Bentley that he had been suffering from depression and anxiety since his neck surgery in 2001. *Id.* at 29, 597. He also stated that he had abused alcohol since adolescence, had been arrested six or seven times for alcohol related offenses, smokes a half-pack of cigarettes each day, and occasionally smokes marijuana when it is available to him. *Id.* at 29, 598. Dr. Bentley observed "no evidence of deterioration in [Plaintiff's] daily living skills", noted that he "easily ambulated around the office", and Plaintiff reported he visited friends and performed household chores on a daily basis, and was able to complete his activities of daily living. *Id.* at 29, 598-99. Dr. Bentley diagnosed Plaintiff with depressive disorder with anxiety, chronic alcoholism, substance abuse, and nicotine dependence, as well as migraine headaches. *Id.* at 29, 599.

In addition to the medical records, the ALJ attributed "some weight"

to the RFC finding reached by Sharon Thompson, a disability specialist.[2] Ms. Thompson found Plaintiff could occasionally lift twenty pounds; frequently lift ten pounds; stand and/or walk for a total of six hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday; unlimited ability to push and/or pull; should avoid all exposure to hazardous machinery and heights, as well as concentrated exposure to vibrations, but could have unlimited exposure to extreme heat or cold, wetness, humidity, fumes, odors, dusts, and gases; and mild limitations in restriction of daily living activities, maintaining social functioning, concentrations, persistance, and pace. *Id*. at 601-18. The ALJ specifically stated that the opinion deserved some weight because the entirety of the medical evidence of record shows "there exist a number of reasons to reach similar conclusions". (Tr. at 32.) Further, as evidenced from the above discussion, the ALJ found the record "does not contain any opinions from treating or examining

---

[2]Plaintiff contends the ALJ "committed reversible error by according weight to the opinion of Ms. Thompson, erroneously concluding that she was a physician." (Doc. 9 at 7.) Plaintiff is correct that Ms. Thompson is a disability specialist, not a physician. However, the ALJ's error was harmless in that, based on the evidence of record, the result of Plaintiff's claim would remain the same regardless of whether Ms. Thompson was a physician or a disability specialist.

physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision."[3] *Id*.

Finally, the ALJ looked to Plaintiff's own testimony in determining his RFC. Plaintiff stated that he could stand for thirty minutes to one hour, walk for fifty yards and sit for two hours, all of which are included in the ALJ's RFC determination. (Tr. at 31, 29). However, Plaintiff claimed he suffered from migraines 2 to 3 times per week, yet other than Plaintiff himself telling Dr. Crouch and Dr. Bentley of the migraines, there is no medical evidence to support the claim. (Tr. at 31.) Further, although Plaintiff has been diagnosed with COPD, he continued to smoke cigarettes regularly, leading the ALJ to conclude the COPD symptoms "are not especially troublesome." While Plaintiff testified that he hardly drank alcohol, he told Dr. Bentley that he drank on a daily basis, and medical records dated January 8, 2007, report that he drank a case of beer per week

---

[3]The ALJ also made note of a previous application made by Plaintiff in which the ALJ determined Plaintiff had the RFC to perform limited light work. The decision was upheld by the Appeals Council in December 2003. (Tr. at 32.) Although Plaintiff contends the past decision was not relevant (Doc. 9 at 7), it is apparent to this Court that the ALJ was merely noting the past decision. It was clearly not a decisive factor in the present case.

and that he smoked a pack of cigarettes per day. *Id*. at 32, 650. Plaintiff also claimed to have never smoked marijuana, yet he told Dr. Bentley that he smoked it when it was available. *Id*. at 32, 598. Lastly, Plaintiff admitted that if he could regulate his sleep pattern, he could work. *Id*. at 31. 595.

Based on the evidence of record as discussed, the ALJ correctly determined Plaintiff's RFC.

IV.  Conclusion.

Upon review of the administrative record, and considering all of Mr. Allen's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this <u>2nd</u> day of <u>September 2010</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671